O

# United States District Court
# Central District of California

| | |
|---|---|
| MATTHEW JOHNSON; NATHAN JOHNSON; GEMINI PARTNERS, INC.; and ALACRITY CAPITAL OFFSHORE FUND LTD., <br><br>   Plaintiff, <br><br>   v. <br><br> DAVID MAZZA; PAUL M. WEST; ANTHONY ALLEN WOOD; CHRISTOPHER ALLEGRETTI; HBK SORCE FINANCIAL, LLC; HA&W WEALTH MANAGEMENT LLC; HABIF, AROGETI & WYNNE, LLP; and DOES 1 through 50, inclusive, <br><br>   Defendants. | Case № 2:15-cv-09183-ODW-AS <br><br> **ORDER DENYING DEFENDANTS' MOTION TO DISMISS [41]** |

## I.   INTRODUCTION

On February 12, 2016, Plaintiffs Matthew Johnson, Nathan Johnson, Gemini Partners Inc., and Alacrity Capital Offshore Fund, LTD. (collectively "Plaintiffs") filed their First Amended Complaint against multiple defendants, including specially

appearing Defendants David Mazza, Paul M. West, and Anthony Allen Wood (collectively, "Defendants"), alleging fraud. (First Am. Compl. ("FAC"), ECF No. 38.) Defendants move to dismiss the First Amended Complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). (Def.'s Mot. to Dismiss Pl.'s First Am. Compl. ("Mot."), ECF No. 41.) For the reasons discussed below, the Court **DENIES** Defendants' Motion to Dismiss.[1]

## II. FACTUAL BACKGROUND

Plaintiffs are brothers who together formed Gemini Partners, Inc. ("Gemini") in 2001 and Alacrity Capital Offshore Fund, Ltd. ("Alacrity") in 2009. (FAC ¶ 26.) Gemini is an investment bank that provides capital-market services to medium-sized businesses. (*Id*.) Alacrity is a fund that provides secured loans to companies that are not able to obtain traditional financing on their own. (*Id*.)

Plaintiffs were introduced to Defendant Mazza by a mutual friend. (*Id.* ¶ 28.) Defendants at the time were promoting a new business model, under the name Alethean, and were soliciting business from Plaintiffs. (*Id*.) Plaintiff Johnson informed Defendants that he was a resident of California and that he conducted his business primarily in California. (*Id.*) Defendants contacted Plaintiffs several times over the phone in order to discuss their business proposal. (*Id.* ¶ 30.) The business proposal offered Gemini an exclusive on investment banking deals through CPA360, a web-based portal that matched CPA's clients in need of financial services with financial services providers, such as Gemini. (*Id*. ¶ 38.) In turn, Alacrity would provide Alethean with a $1 million loan. (*Id.*) Defendants assured Plaintiffs that revenues generated as a result of the deal would exceed $5 million and that two of the top-100 accounting firms in the country—Defendants HBK Sorce Financial, LLC, and HA&W Wealth Management LLC—were fully committed to Alethean. (*Id.* ¶¶ 37–38, 40, 42.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

Years passed without significant deal flow to Gemini and without proper payments from Alethean to Alacrity. (*Id.* ¶¶ 48, 50.) After making a formal demand for payment, Defendants Wood, West, and Mazza, among others, began taking the position that they were no longer involved in the Alethean business model. (*Id.* ¶ 50.) Plaintiffs filed suit against the Alethean entities in California state court. (*Id.* ¶¶ 50–51.) The court granted default judgment in December 2013. (*Id.* ¶ 51.) In early 2015, while trying to collect on the default judgment, Plaintiffs discovered a bankruptcy and a number of lawsuits filed against several Defendants named in this action. (*Id.* ¶¶ 52–53.) After reviewing the documents involved in the lawsuits, Plaintiffs discovered that Alethean was neither unique nor proprietary and had never been fully implemented or deployed, as previously stated. (*Id.* ¶¶ 54–57.)

On October 29, 2015, Plaintiffs filed their Complaint in Los Angeles County Superior Court, asserting the following causes of action: (1) fraud; (2) fraudulent inducement; (3) fraudulent transfer; and (4) constructive fraudulent transfer. (Pl.'s Original Complaint ¶¶ 124–155, ECF No. 1-2.) On November 25, 2015, the case was removed to this Court. (Notice of Removal, ECF No. 1.) On December 9, 2015, Defendants Mazza, West, and Wood filed a Motion to Dismiss for lack of personal jurisdiction. (Def.'s Mot. to Dismiss, ECF No. 10.) On January, 29, 2016, this Court granted Defendants' Motion to Dismiss with leave to amend. (ECF No. 36.)

On February, 12, 2016, Plaintiffs filed their First Amended Complaint, asserting the same four causes of action. (FAC ¶¶ 128–159.) On February 26, 2016, Defendants West, Wood, and Mazza filed this Motion to Dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). (Mot. 2.) A timely opposition and reply were filed. (Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Opp'n"), ECF No. 49; (Def.'s Reply to Pl.'s Opp'n ("Reply"), ECF No. 50.) This Motion is now before the Court for consideration.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) provides that if a party brings an action in the wrong court, a defendant can move to dismiss for improper venue. Fed. R. Civ. P. 12(b)(3). Parties may, by contract, designate a forum in which any litigation arising under the contract will take place. *Comm. Network Servs. Corp. v. COLT Telcomms.*, 2004 U.S. Dist. LEXIS 18049, at *7. Litigation commenced elsewhere may be subject to dismissal for improper venue. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595. Most forum-selection clauses enjoy strong presumptions of validity, *Spradlin v. Lear Siegler Management. Services Co.*, 926 F.2d 865, 868 (9th Cir. 1991), and enforceability, *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004). A number of courts, including the Ninth Circuit, hold that a forum-selection clause is grounds for a rule 12(b)(3) motion to dismiss for "improper venue." *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996); *Albany Ins. Co. v. Almacanadora Somex, S.A.*, 5 F.3d 907, 909, fn.3 (5th Cir. 1993).

When a motion to enforce a forum-selection clause is made pursuant to Fed. R. Civ. P. 12(b)(3), the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings. *Murphy*, 362 F.3d at 1137 (*citing Richards v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir.1998) and *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996)).

*Murphy* sets a new standard for evaluating a 12(b)(3) motion to dismiss pursuant to a forum-selection clause. If there are contested facts bearing on the enforceability of the forum-selection clause, with respect to the non-moving party's "meaningful day in court," the court is obligated to draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party. *Murphy*, 362 F.3d. at 1138. If the facts asserted by the non-moving party are sufficient to preclude enforcement of a forum-selection clause, the non-moving party survives a 12(b)(3) motion. *Id.* at 1139.

## IV. DISCUSSION

Defendants request that the Court dismiss this action for improper venue due to a Forum Selection Clause in the Note and Marketing Agreement ("Agreement") between the two parties. (Mot. 2.) Plaintiffs, on the other hand, argue that the Forum Selection Clause does not apply because this action is not based on the Agreement, and, regardless, Defendants waived this defense by omitting it in their prior motion. (Opp'n 1.) The Agreement reads, in relevant part:

> "The validity of this Note, and the construction, interpretation, and enforcement hereof, shall be governed by and construed under the internal laws of the State of Delaware, without regard to conflict of law provisions. Each Loan Party agrees that any suit arising out of or related to this Note may be brought only in a Delaware state or, to the extent permitted by law, federal court sitting in Wilmington, Delaware, as the Lender may elect in its sole discretion, and consents to the non-exclusive jurisdiction of such courts; provided, however, that any suit seeking enforcement against any Collateral or other property may be brought, at Lender's option, in the courts of any jurisdiction where Lender elects to bring such action or where such Collateral of other property may be located."

(Decl. of Matthew Johnson, Ex. 1 ¶ 5.5, ECF No. 24-2.)

**1. Waiver of Improper Venue**

In their opposition, Plaintiffs argue that Defendants waived their right to assert improper venue when they omitted it from their initial Motion to Dismiss. (Opp'n 1.) Defendants, however, contend that they did not waive their forum argument because it was not available to them at the time of their initial Motion to Dismiss. (Reply 5.)

The defense of improper venue is waived if omitted in a preanswer Rule 12 motion. Fed. R. Civ. P. 12(h)(1). Waiver results where a defendant files a motion under Rule 12 raising some other ground and the defense was available at the time the Rule 12 Motion was made. Fed. R. Civ. P. 12(g)(2).

Here, Defendants filed their initial Motion to Dismiss on December 09, 2015. (Def.'s Mot. to Dismiss Pl.'s Compl., ECF No. 10.) While Plaintiffs did not introduce

the Agreement into evidence until December 21, 2015, it was signed by Defendant West on October 1, 2010. (Johnson Decl. Ex. 1, ECF No. 49-1.) Therefore, Defendants were aware of the Agreement at the time they filed their initial Motion to Dismiss and it was duly available to them. As such, Plaintiffs waived their right to assert improper venue because they failed to raise it at the time of their initial Motion to Dismiss.

**2. Forum Selection Clause Does Not Apply**

Even if Defendants did not waive their right to assert improper venue, the forum selection clause would not apply here because this action does not arise from the Agreement that contains the clause. (Opp'n 4.)

A forum selection clause is presumed valid and will generally be enforced. *MIS Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 210 (7th Cir. 1993.) Here, the clause applies to "any suit arising out of related to [the Agreement]." (Johnson Decl. Ex. 1, ECF No. 49-1.) Further, it specifies that a suit "may be brought only in a Delaware state or, to the extent permitted by law, federal court sitting in Wilmington, Delaware as the [Plaintiffs] may elect in its sole discretion." (*Id.*) Therefore, Plaintiffs need to defeat the presumption of validity to thwart enforcement of the forum selection clause.

Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract. *Berrett v. Life Ins. Co. of the Southwest*, 623 F. Supp. 946, 948–9 (D. Utah 1985) (holding that where the alleged tortious acts are "unrelated to the interpretation" of the agreement, the forum selection clause does not apply because the parties would not have contemplated that their actions would be governed by the forum selection clause). Similarly, a forum selection clause does not apply where the claims do not pertain to the agreement that contained the forum selection clause. *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1267 (N.D. Cal. 2001).

Here, Plaintiffs' claims for fraud, inducement of fraud, fraudulent transfer, and constructive fraudulent transfer are unrelated to the interpretation of the Agreement. Plaintiffs contend that Defendants' actively contacted them for investment opportunities with Alacrity and willfully misrepresented that the CPA360 software was unique and proprietary. (FAC ¶¶ 1–3, 31, 37.) They also allege that Defendants falsely claimed that two of the top 100 accounting firms in the nation had already committed to participate in the model. (FAC ¶¶ 3–6, 37.) Plaintiffs allege that these fraudulent misrepresentations induced them to enter into the Agreement, which gave them an exclusive on investment banking deals through CPA360 in exchange for a loan of $1 million. (FAC ¶ 38.) Plaintiffs contend that they would have never entered into the Agreement if not for Defendants' fraud and material misrepresentation. (FAC ¶¶ 128–159.) Plaintiffs' claims focus solely on the circumstances surrounding the formation of the contract rather than the interpretation of it. Therefore, even if Defendants did not waive their right to assert improper venue, the forum selection clause would not apply to this action.

### 3. Los Angeles is the Proper Venue for this Action

Federal law authorizes a civil action to be brought where a substantial part of the events giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). The substantiality is determined by assessing the ramifications of the operative events for efficient conduct of the suit. *Lamont v. Haig*, 590 F.2d 1124, 1134–35 (D.C. Cir. 1978). In tort actions, "the locus of the injury [is] a relevant factor." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001).

Here, Defendants first made contact with Plaintiffs in California. (FAC ¶ 9.) Defendants were informed that Plaintiffs reside in California and that their businesses were California corporations. (*Id.*) Defendants are also believed to have visited California on multiple occasions to meet with Plaintiffs in Los Angeles. (*Id.*) The execution of the Agreement occurred in California. (FAC ¶ 39; Decl. of Matthew Johnson Ex. 1). Lastly, the Agreement was to be performed in California. (*Id.*)

Therefore, because a substantial part of the operative events occurred in this district, Los Angeles is the proper venue for this action.

### V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motion to Dismiss. (ECF No. 41.)

**IT IS SO ORDERED.**

July 5, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**