OLIVIA O. BISSELL, SBN 119157
BISSELL & ASSOCIATES, P.C.
1028 North Lake Avenue, Suite 101
Pasadena, CA 91104
Telephone: (310) 508-9575
Fax: (310) 300-0711
Email: oliviabissell@gmail.com

*Attorney for Defendants/Counterclaim Plaintiffs*
*David Mazza, Paul M. West and Anthony A. Wood*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

MATTHEWJOHNSON, an individual; NATHAN JOHNSON, an individual; GEMINI PARTNERS, INC., a California corporation; and ALACRITY CAPITAL OFFSHORE FUND, LTD., a Cayman Islands limited partnership;
Plaintiffs,

vs.

DAVID MAZZA, an individual; PAUL M. WEST, an individual; ANTHONY ALLEN WOOD, an individual; JOSEPH D. SIMMS, an individual; CHRISTOPHER ALLEGRETTI, an individual; HBK SORCE FINANCIAL, LLC, an Ohio limited liability company; HILL BARTH & KING LLC, an Ohio limited liability company; HA&W WEALTH MANAGEMENT LLC, a Delaware limited liability company; HABIF, AROGETI & WYNNE, LLP, a Georgia limited liability company; and DOES 1through 50, inclusive,

Defendants.

CASE NO. 2:15-CV-09183-ODW-AS

**DEFENDANTS DAVID MAZZA, PAUL M. WEST AND ANTHONY ALLEN WOOD'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE COUNTERCLAIMS AS MERITLESS SLAPP ACTION (C.C.P. § 425.16) OR TO DISMISS PURSUANT TO FRCP 12(B)(6)**

DATE: September 12, 2016
ROOM: 11
TIME: 1:30 PM
JUDGE: OTIS WRIGHT, II

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs/counterclaim defendants' Anti-SLAPP motion and or motion to dismiss under Federal Rule 12(b)(6) is without merit and should not be entertained by this Honorable Court, as the original counterclaims, as well as the Declarations of defendants and counterclaim plaintiffs, Paul West, Anthony "Tony" Wood and David Mazza (hereinafter collectively referred to as "counterclaim plaintiffs" or "defendants"), and the exhibits annexed thereto, clearly establish a meritorious claim against the plaintiffs sufficient to defeat the instant Anti-SLAPP and Rule 12(b)(6) motions pending before this Honorable Court as a matter of law[1].

## II. STATEMENT OF RELEVANT FACTS

This litigation arises out of a calculated scheme by Matthew Johnson and the other named plaintiffs to manipulate these defendants and later, the court system, for their own personal and financial gain. In short, this Federal lawsuit, veiled as a fraud claim, iS nothing more than a collection case, which is the result of plaintiff/counterclaim defendants fraudulent dealings, representations and actions from the inception of the parties relationship, some of which only came to light as a result of defending the instant lawsuit.

Plaintiffs Matthew and Nathan Johnson, through Alacrity Capital Offshore Fund, Ltd. ("Alacrity") and Gemini Partners, Inc. ("Gemini"), began discussing potential investment banking opportunities with Alethean Management, LLC

---

[1] While defendants' recognize that an Anti-SLAPP motion prevents a party from amending a complaint and/or counterclaim while the Anti-SLAPP motion is pending, leave to amend is freely given in response to a motion to dismiss, and to the extent that this Honorable Court denies plaintiffs' Anit-SLAPP motion, which defendants' maintain ought to occur, leave to amend the complaint to overcome any perceived shortcomings is herein requested and or, should the court grant plaintiffs' Rule 12(b)(6) motion, which defendants' maintain ought not occur, same should be without prejudice as this Court did in response to defendants' initial motion to dismiss plaintiffs' first Complaint in the instant case specifically ruling "However, based on the allegations in Plaintiff's Opposition, if given leave to amend, it is likely that Plaintiffs would be able to establish jurisdiction over Defendants." (Order 8:11-14).

("Alethean") through Paul West, Tony Wood and David Mazza. The initial conversations centered around Alethean's ability to introduce investment banking opportunities to Gemini. From there, the plaintiffs learned that Alethean was also seeking funding of their own, and Alacrity became interested in making a loan.

The discussions culminated in the execution of a May 2010 "Term Sheet" wherein Alacrity agreed to loan $1,000,000 to Alethean, with an initial funding of $500,000 to occur no later than May 17, 2010 (Declaration of Paul West "West", **Exhibit A**).[2] Thereafter, on or about July 30, 2010, Alethean and Gemini entered into an Investment Banking Marketing Agreement, whereby Alethean agreed to give all potential investment deals to Gemini for funding, with Alethean to receive a referral fee of 25% for each deal referred and closed (West Declaration; **Exhibit B**). Said referral fees were intended to produce revenue for Alethean, which would be used to a) generate capital and b) repay the Alacrity Note.

The initial Term Sheet (page 5) stipulated that Alacrity would perform "due diligence" before entering into a formal loan agreement and or funding the additional $500,000. Indeed, Alacrity requested voluminous documentation and information from Paul West and Alethean (West Declaration; **Exhibit C**). Seemingly satisfied that the validity of Alethean's business model and the representations of West, Wood and/or Mazza, having performed their own due diligence, Alacrity entered into an October 1, 2010 Secured Promissory Note and Security Agreement with Alethean (**Exhibit D**).

Over the course of the next two years, the parties executed numerous other agreements and restatements, and at no point did the plaintiffs express any concerns or questions regarding the business of Alethean. In mid to late 2011, after Johnson sent a default notice to Alethean, he forced the sale of Alethean's

---

[2] All referenced to Exhibits herein, unless noted otherwise, refer to the Exhibits annexed to the Declaration of Paul West, filed contemporaneous hereto.

largest asset, known as HA&W Holdings for $752,414.22. This deal was negotiated and structured by Alethean's CEO at the time, Jim Driscoll; and urged, consented to and approved by Alacrity (i.e. - Matt Johnson), with the funds from the sale wired directly to the J.P. Morgan bank account of Alacrity (**Exhibit G**). Days after the transaction, Johnson signed another Note with Alethean. The transaction, at the time, raised many conflict of interest red flags, and resulted with Jim Driscoll receiving an indemnity agreement for his involvement (Declarations of Wood and West).

In May 2012, Matt Johnson negotiated to assume control of Alethean, in essence, running the company as it wound down operations including having Alethean bank statements sent directly to him (West Declaration, **Exhibit J; Exhibit M**). As the bank statements show, Matt Johnson continued to receive monies through Alethean, which he denied receiving in his Declaration (**Exhibit L**) filed with the California State Court when he sought a default judgment against Alethean in 2013 (CA Complaint; **Exhibit K**).[3]

Most egregious though is the basis for the present lawsuit, and more importantly, Matt Johnson's claim that he did not know of the alleged fraud that had been perpetrated against him until late 2015, when he attempted to collect on his spuriously obtained default judgment. Such a claim should not be entertained by this Court, as Matt Johnson/Alacrity not only performed an extensive due diligence check before commencing any business, entered into multiple deals after the initial deal, and eventually, assumed control of Alethean. Moreover, despite making a net loan of $955,000.00 to Alethean, and receiving $895,500.00 back from Alethean by late 2011 (*see* Answer with Counterclaims), Matt Johnson

---

[3] As outlined in the Declaration of West and Wood, Matt Johnson essentially sought a default judgment against himself, having assumed control of Alethean by the end of 2012. In obtaining the judgment, he submitted a declaration which failed to account for the above fact, and would have explained why Alethean did not appear in the action to defend the claims. Moreover, he affirmatively stated "no payments" were made on the October 1, 2011 note, which was false per the Declarations of Wood and West.

directed Alacrity to file the 2013 CA State action and sought a default judgment therein, and as well as the instant 2015 Federal Lawsuit, seeking over 1 million dollars in damages for an actual estimated loss of no more than $50,000. *See* counterclaims. As such, both the CA State Action, and the instant lawsuit, are nothing more than an attempt to use the Courts to Johnson/Alacrity's advantage, which result he fraudulently orchestrated during his business dealings with the moving defendants, including his taking over the company and negotiating self-serving Agreements and Notes through the manipulation of then CEO Jim Driscoll and the defendants herein.

## III. PLAINTIFFS' ANTI-SLAPP MOTION SHOULD BE DENIED AS COUNTERCLAIM PLAINTIFFS CLAIMS DO NOT ARISE OUT OF PETITIONING ACTIVITY AND HAVE LEGAL MERIT

California's Strategic Lawsuits Against Public Participation ("Anti-SLAPP") statute was enacted to prevent parties from filing lawsuits or claims which are intended to chill or punish someone's right to free speech or petition the government. Cal. Civ. Proc. Code § 425.16(b)(1). In determining an Anti-SLAPP motion, the court should examine the purpose of the claims to determine whether the Anti-SLAPP statute applies. *Martinez v. Metabolife Intl., Inc.* 113 Cal.App.4th 181, 188 (2003). If the allegations referring to arguably protected activity are only incidental to the underlying causes of action, such references do not warrant dismissal under the Anti-SLAPP statute. *Martinez v. Metabolife Intl., Inc., supra*.

As evidenced within the defendants' counterclaims, the alleged fraudulent acts and interference with contractual relations all occurred before counterclaim defendants filed their initial pleadings in this case. Accordingly, the purpose of defendants' counterclaims was not to chill plaintiffs, but to allege their own, viable causes of action against them, some of which were only learned through

investigations following the filing of plaintiffs' initial pleadings. As such, counterclaim defendants motion should be denied as a matter of law.

Assuming, *arguendo*, that the Court finds the purpose of counterclaim plaintiffs' claims was to chill the counterclaim defendants, the Court will employ a two-step approach in deciding the Anti-SLAPP motion.

First, the moving party must establish that the claims sought to be dismissed arise from a petitioning activity. *U.S. v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999). Once the moving party has satisfied the first prong, the burden shifts to the non-moving party to establish that their claims have legal merit. *Id.* In the context of an Anti-SLAPP motion, the hurdle of legal merit is low, and requires only that the suit possesses "minimal merit." *Nevellier v. Sletten*, 52 P.3d 703 (2002).

It is respectfully submitted that a review of the counterclaims themselves, as well as the attached Declarations of West, Wood and Mazza, and the exhibits annexed thereto, establish, as a matter of law, that the defendants have alleged meritorious claims which warrant denial of plaintiffs' Anti-SLAPP motion.

**a. Counterclaim Plaintiffs' Claims do not Arise out of Counterclaim Defendants' Lawsuit**

Defendants' counterclaims do not arise from plaintiffs filing of their initial and amended complaint. In much the same fashion as Johnson claims he did not know of the fraud until 2015, defendants did not know of Johnson's fraudulent activities and actions until he, Johnson, filed the instant Federal Court action. That the defendants learned of the fraud and other causes of action as a result of this lawsuit, and realization of the CA State lawsuit and default judgment, does not establish that the counterclaims arise out of the plaintiffs' filling their lawsuit. Put differently, the counterclaim plaintiffs' claims arise as a result of the counter defendants fraudulent business dealings, not as a result of their filing a lawsuit. As

the dissent in *Navellier* notes, "the second suit was based not on the first suit, but on the underlying dispute between the parties." *Navellier, supra* at 543. In *City of Crotati v. Cashman* 29 Cal.4th 69, 76-77 (2002) the Court noted "the mere fact that an action was filed after protected activity took place does not mean it arose from that activity." Here, the claims alleged by the counterclaim plaintiffs all occurred before counterclaim defendants filed suit, and while some elements of the claims were only learned as a result of the filing, the acts for which the counterclaim plaintiffs seek redress all arose before the initial complaint was filed, particularly the acts of Matt Johnson restructuring deals to the detriment of Alethean; taking over control of Alethean; directly receiving payments on the Note; and then obtaining a default judgment based upon a declaration which contained improper facts. The above allegations are outlined at length *infra* and within the alleged counterclaims, as well as the Declarations of Wood, West and Mazza, and the Exhibits annexed thereto.

**b. Counterclaim Plaintiffs' Claims have Minimal Legal Merit**

In reviewing the defendants' counterclaims, whether in response to the Anti-SLAPP motion or motion to dismiss, the court must read the pleading in its entirety to determine whether it alleges facts sufficient to support a cause of action. *Tarman v. State Farm Mut. Auto Ins. Co.*, 2 Cal.App.4th 153 (1991). For the purposes of deciding the Anti-SLAPP motion, unless the entire complaint is deemed meritless, the motion must fail as a matter of law. *See Oasis West Realty, LLC v. Goldman* (2011) 51 Cal. 4th 811, 821, [if a plaintiff "can show a probability of prevailing on any part of its claim, the cause of action is not meritless" and will not be stricken under the anti-SLAPP statute]; *Mann v. Quality Old Time Service, Inc.* 120 Cal.App.4th 90 (2004) ["a court need not engage in the time-consuming task of determining whether the plaintiff can substantiate all theories presented

within a single cause of action and need not parse the cause of action so as to leave only those portions it has determined have merit.”] Under the anti-SLAPP statute, even where a lawsuit arises out of protected activity, a motion to strike still may not be granted if “the plaintiff has established that there is a probability that [they] will prevail on the claim.” Code Civ. Proc. § 425.16(b)(1).

As the counterclaim plaintiffs can establish a probability of prevailing on all if not one of their claims, counterclaim defendants’ motion must be denied in its entirety.

> When determining whether a claim has minimal legal merit:
>
> ‘the trial court considers the pleadings and evidentiary submissions of both the [counterclaim] plaintiff and the [counterclaim] defendant (§ 425.16, subd. (b)(2)); though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the [counterclaim] defendant's evidence supporting the motion defeats the [counterclaim] plaintiff's attempt to establish evidentiary support for the claim.’ (citation) In making this assessment it is ‘the court's responsibility ... to accept as true the evidence favorable to the [counterclaim] plaintiff....’ (citation) The plaintiff need only establish that his or her claim has ‘minimal merit’ (citation) to avoid being stricken as a SLAPP.” *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 291 (2006)

In making its determination, the Court is permitted to weigh factual declarations, such as those submitted by West, Wood and Mazza. See *Soukup*, *supra*; Anti-SLAPP statute § 425.16(b)(2). Here, counterclaim plaintiffs’ Declarations and the exhibits attached thereto, as well as the initial counterclaims, all establish facts sufficient to support meritorious causes of action.

**Counterclaim Plaintiffs Fraud Claims**

Plaintiffs have alleged facts "sufficient to give defendants notice of the particular misconduct which is alleged to constitute the fraud." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). While counterclaim defendants claim that a higher standard of pleading exists because the claims are alleged against "corporations", they fail to recognize that counterclaims were filed against Matt Johnson and Nathan Johnson, individually. Nevertheless, the Counterclaims and Declarations lay out the required elements of a fraud claim against both the individual and corporate counterclaim defendants. That counterclaim defendants quote only from the particular claim section, while ignoring the fact section of counterclaim plaintiffs' counterclaim, only belies the fact that counterclaim defendants continue to distort the facts of this case. A careful review of the counterclaim and Declarations makes it abundantly clear that counterclaim plaintiffs (1) alleged who made the false representations (Matt Johnson); (2) Matt Johnson's authority to speak; (3) to whom Matt Johnson spoke at Alethean; (4) what he said and wrote in the way of loan notes, marketing agreements, emails, declarations and forbearance agreements; and (5) when it was said and or written, all in compliance with *Tarmann, supra*.

The fraud was also not based on future actions, the fraud was real in that Matt Johnson set out to defraud Alethean, by burying it in debt, making payoff of the debt impossible by obstructing deals, taking over the company, failing to credit payments received and then obtaining a default judgment against himself, and in the process, filing a false declaration in support of default (West and Wood Declarations). The above caused counterclaim defendants damages in that West was forced to pay an IRS debt that Alethean, then run by Matt Johnson, should have paid, and all three were damaged by the loss of numerous revenue generating deals, specifically the Hoshizaki deal which Johnson fraudulently gave to

Redwood, his new entity, purposefully removing that deal from the Gemini-Alethean agreement to cause the default and thus, allow him to seek an over $1,000,000 judgment for an actual loss of less than $50,000. *See* Counterclaims and Declarations of West and Wood. Such is the fraud alleged, and the counterclaim plaintiffs have produced admissible evidence in support of said claim, which easily meets the minimum merit test to be applied by this court in deciding movant's Anti-SLAPP motion.

**Counterclaim Plaintiffs' Conspiracy Claim**

Counterclaim plaintiffs' conspiracy claim is laid out in both the counterclaim factual section, as well as the Declarations offered in opposition to the instant motion. In short, the conspiracy here was undertaken by Matt and Nathan Johnson, and to some extent, Redwood Capital and Jim Driscoll, former CEO of Alethean, in their renegotiation of numerous deals to their own advantage, as well as the removal of the Hoshizaki deal from Gemini to Redwood, so that Alethean would not realize the $750,000 fee payable under that deal which, undoubtedly, was introduced to the Johnson brothers by the counterclaim defendants (West and Wood Declarations). The conspiracy was further accomplished by the counterclaim defendants' efforts to make deal closure nearly impossible through Gemini, despite the introduction of numerous deals by the counterclaim defendants, so that they could, years later, file a lawsuit seeking damages well in excess of their actual losses, while we can only assume, also writing off their losses in the short term, all for their own benefit (Declarations; **Exhibit N**). The conspiracy also surfaced when Matt Johnson orchestrated the sale of Alethean's asset, HA&W, which sale prompted an indemnity agreement to be drafted in favor of then Alethean CEO Jim Driscoll to protect him from the clear conflict of interest that encircled the deal (Declarations of Wood and West).

The above actions caused counterclaim plaintiffs damages in that they lost their initial investments, other business opportunities and suffered actual losses as described above, all supporting a cognizable conspiracy claim and denial of plaintiffs Anti-SLAPP and Rule 12(b)(6) motion as a matter of law.

**Counterclaim Plaintiffs Intentional Interference with a Contract Claim**

To prevail on a claim for intentional interference with a contact, a plaintiff must prove (a) a contract between plaintiff and a third-party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contract; (4) breach or disruption of the contract; and (5) resulting damage.

Alacrity filed a claim against Alethean for breach of contract in CA State Court in 2013 and therein, obtained a default judgment against Alethean, which judgment they are attempting to collect upon by virtue of the instant lawsuit. As outlined throughout this opposition, the counterclaims, and the Declarations of the parties; Alethean entered into a contract with both Alacrity and Gemini, which contracts were renegotiated numerous times, all at the behest of Matt Johnson and his brother. Matt Johnson facilitated some of those transactions while working for Redwood Capital. As such, Matt Johnson, and to some extent, Alacrity and or Gemini, intentionally interfered with and rendered compliance with the various Alethean contracts impossible. Johnson's interference was intentional and intended to cause Alethean to breach its payback of the loan to Alacrity, which worked to the benefit of Gemini, Redwood and most importantly, Matt Johnson. As such, there was intentional interference by a third-party with the various contracts, in part because Matt Johnson and his various corporate entities were all looking to create a benefit to them, while damaging Alethean and the individual counterclaim plaintiffs. As such, counterclaim plaintiffs have established that their

intentional interference with a contract claim has, at the very least, minimal merit, such that the Anti-SLAPP motion ought to be denied.

**Counterclaim Plaintiffs Negligent Interference with a Contract Claim**

First and foremost, counterclaim plaintiffs acknowledge that they misstated this claim, as same should have been identified as a claim for negligent interference with prospective economic advantage, which is a recognized claim in California. *J'Aire Corp. v. Gregory*, 24 Cal.3d 799 (1979). To the extent that amendments to pleadings are to be freely given, counterclaim plaintiffs will seek redress from this Court to amend their counterclaims upon a denial of the Anti-SLAPP motion. *Swartz v. KPMG LLP*, 476 F.3d. 756 (9th Cir. 2007).

Assuming, *arguendo*, that the Court were inclined to allow an amendment to counterclaim plaintiffs claim, such claim would have merit for essentially the same reasons as set forth in support of counterclaim plaintiffs intentional interference claims, *supra*. Further, as the claim, although improperly named, has merit, it is not grounds for granting defendants' Anti-SLAPP motion especially since, as stated above, the court need not look to all claims where plaintiff can establish one viable claim. *Oasis West Realty, LLC; Mann; Supra.*

**Counterclaim Plaintiffs Equitable Estoppel Claim**

The doctrine of equitable estoppel is codified in California Evidence Code section 623, which states:

> When a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.

Four elements must ordinarily be proven to establish an equitable estoppel claim: (1) the party to be estopped must know the facts, (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had

the right to believe that it was so intended, (3) the party asserting the estoppel must be ignorant of the true state of the facts, and (4) he must rely upon the conduct to his injury. *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd.* 30 Cal.App.4th 54, 59(1994); *Insurance Co. of the West v. Haralambos Beverage Co.* 195 Cal.App.3d 1308, 1321 (1987).

Here, the elements can easily be met by the counterclaim plaintiffs as (1) Matt and Nathan Johnson knew what they were doing; (2) intended for their conduct and statements to be acted and relied upon; (3) the counterclaim plaintiffs had no reason to believe they were being led down a dead end road; and (4) they relied upon the misgivings of the Johnson brothers to their detriment, resulting in substantial financial damages.

## IV. COUNTER DEFENDANTS MOTION FOR ATTORNEY FEES SHOULD BE DENIED, AND THESE ANSWERING COUNTER PLAINTIFFS SHOULD BE AWARDED ATTORNEY FEES

Pursuant to California Code of Civil Procedure §§ 128.5 and 425.16(c)(2), the denial of counterclaim defendants Anti-SLAPP motion permits this Court to award counterclaim plaintiffs reasonable attorney fees. *See also Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001). As there is no merit to counterclaim defendants' Anti-SLAPP motion, because the claims are clearly not based on conduct taken in furtherance of counterclaim defendants' initial petition rights, but separate and actionable causes of action which clearly have merit, counterclaim defendants motion for attorney fees should be denied, and counterclaim plaintiffs should be awarded attorney fees.

Undersigned counsel charges $500 per hour and spent approximately 20 hours preparing this opposition and the supporting Declarations of West, Wood and Mazza. In addition, counsel will spend approximately 2 hours attending the

hearing on the special motion to strike. Thus, if the motion is denied, counterclaim plaintiffs are entitled to an award of attorney's fees in the amount of $11,000.

## V. CONCLUSION

For the foregoing reasons, counterclaim plaintiffs Paul West, Anthony Wood and David Mazza respectfully request that the Court enter an Order denying counterclaim defendants' Special Motion to Strike and or Rule 12(b)(6) Motion to Dismiss; granting attorney fees to counterclaim plaintiffs, and ordering such other and further relief as this Court may deem just and proper.

Respectfully submitted:

Dated: August 22, 2016

BISSELL & ASSOCIATES, P.C.

*/s/ Olivia O. Bissell*

By:______________________________

OLIVIA O. BISSELL
*Attorney for Defendants /Counterclaim Plaintiffs David Mazza, Paul M. West and Anthony A. Wood*