**O**

1
2
3
4
5
6
7
8          United States District Court
9          Central District of California
10

| | |
|---|---|
| 11   MATTHEW JOHNSON; NATHAN | Case No. 2:15-cv-09183-ODW(AS) |
| 12   JOHNSON; GEMINI PARTNERS, INC.; | |
| 13   and ALACRITY CAPITAL OFFSHORE | **ORDER GRANTING PLAINTIFFS'** |
| 14   FUND, LTD., | **MOTION TO DISMISS [90],** |
| 15                   Plaintiffs, | **DENYING PLAINTIFFS' MOTION** |
| 16          v. | **TO STRIKE, AND GRANTING** |
| 17   DAIVD MAZZA; PAUL M. WEST; | **DEFENDANTS' MOTION FOR** |
| 18   ANTHONY ALLEN WOOD; JOSEPH D. | **JUDGMENT ON THE PLEADINGS** |
| 19   SIMMS; CHRISTOHPER ALLEGRETTI; | **[95]** |
| 20   HILL BARTH & KING LLC; HA&W | |
| 21   WEALTH MANAGEMENT LLC; | |
| 22   HABIF, AROGETI & WYNNE, LLP; and | |
| 23   DOES 1 through 50, inclusive, | |
| 24                   Defendants. | |

25
26                          **I.    INTRODUCTION**
27          This case involves claims and counterclaims directed toward various plaintiffs
28   and defendants individually and as groups.  For purposes of the motions discussed

herein, all Plaintiffs/Counterdefendants (Matthew Johnson, Nathan Johnson, Gemini Partners, Inc. ("Gemini"), and Alacrity Capital Offshore Fund, Ltd. ("Alacrity") (collectively, "Plaintiffs")) bring motions and defenses as a group. However, two distinct groups of defendants have emerged for purposes of the motions discussed in this Order: Defendants Christopher Allegretti and Hill, Barth & King LLC ("HBK"), and Defendants David Mazza, Paul M. West, and Anthony Allen Wood (collectively, "Mazza").

On September 20, 2016, the Court granted Allegretti and HBK's first Motion for Judgment on the Pleadings, giving Plaintiffs leave to amend their claims directed at Allegretti and HBK involving fraud. (ECF No. 80.) On October 4, 2016, the Court granted Plaintiffs' first Motion to Dismiss Mazza's counterclaims. (ECF No. 81.) That Order dismissed Mazza's counterclaims for intentional interference with a contract, negligent interference with a contract, equitable estoppel, fraud, and conspiracy. It granted leave to amend for all causes of action except equitable estoppel.

Following those two orders, Plaintiffs filed a second amended Complaint (ECF No. 83), Allegretti and HBK filed a new Answer (ECF No. 87), and Mazza filed a new Answer with associated counterclaims (ECF No. 89.) Defendant HA&W Wealth Management LLC also filed a separate answer. (ECF No. 88.) Plaintiffs then filed a Motion to Dismiss and/or Strike Mazza's counterclaims (ECF No. 90), and Allegretti and HBK filed a Motion for Judgment on the Pleadings (ECF No. 95.) Those motions are fully briefed and ready for decision.[1] For the reasons discussed below, the Court **GRANTS** Plaintiffs' Motion to Dismiss, **DENIES** Plaintiffs' Motion to Strike, and **GRANTS** Allegretti and HBK's Motion for Judgment on the Pleadings.

## II.   FACTUAL BACKGROUND

---

[1] After carefully considering the papers filed with respect to the Motions, the Court deems the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

Matthew and Nathan Johnson are brothers who together formed Gemini in 2001 and Alacrity in 2009. (Second Am. Compl. ("SAC") ¶ 25, ECF No. 83.) Gemini is an investment bank that provides capital market services to medium-sized businesses, and Alacrity is a fund that provides secured loans to companies unable to obtain traditional financing. (*Id.*)

The Johnson brothers met David Mazza in 2010 in the context of a new business model Mazza was promoting under the name Alethean. (*Id.* ¶ 27.) Mazza solicited business from the Johnsons, offering Gemini an exclusive on investment banking deals through CPA360, a web-based portal. (*Id.* ¶¶ 31–32, 37.) CPA360 was allegedly designed to match CPA clients in need of financial services with financial services providers, such as Gemini. (*Id.*) In turn, Alacrity would provide Alethean with a $1 million loan. (*Id.* ¶ 37.) Mazza assured Johnson that revenues generated as a result of the deal would exceed $5 million and that two of the top-100 accounting firms in the country—Defendants HBK and HA&W Wealth Management LLC—were fully committed to Alethean. (*Id.* ¶¶ 37, 48.) Moreover, Plaintiffs allege that representatives of HBK and HA&W made assurances to Plaintiffs about their respective firms being fully committed to the Alethean model. (*Id.* ¶ 44.) Plaintiffs claim to have "relied heavily" on those assurances. (*Id.* ¶ 48.)

After the parties entered into a formal agreement, years passed without significant deal flow to Gemini and without the required loan payments from Alethean to Alacrity. (*Id.* ¶¶ 51–56.) The Johnson brothers made a formal demand for payment, at which point Defendants Wood, West, and Mazza, among others, took the position that they were no longer involved with Alethean. (*Id.* ¶ 55.) In 2013, Johnson filed suit against the Alethean entities in California state court. (*Id.* ¶¶ 57.) The state court granted default judgment in December 2013. (*Id.*) In early 2015, while trying to collect on the default judgment, Johnson discovered a bankruptcy and a number of lawsuits filed against several of the Defendants named in this action. (*Id.* ¶¶ 58–59.) After reviewing the documents involved in those lawsuits, Johnson

discovered that Alethean was neither unique nor proprietary and had never been fully implemented or deployed.  (*Id.* ¶¶ 59–61.)

Mazza also asserts counterclaims against Plaintiffs.  Mazza's position, alternatively, is that Johnson perpetrated a scheme to defraud Mazza through the loan agreement and through the court system.  (*See generally* Answer with Countercl.)

## III.   DISCUSSION

The Court begins by addressing Plaintiffs' Motion to Dismiss and/or Strike and then addresses Allegretti and HBK's Motion for Judgment on the Pleadings.

**A.   Plaintiffs' Motion to Dismiss and/or Strike**

Mazza asserts five counterclaims against Plaintiffs: intentional interference with a contract; Defendant West's separate counterclaim for intentional interference with a contract; intentional interference with a prospective economic advantage; fraud; and conspiracy.  (Answer with Countercl.)  In moving to strike and/or dismiss those causes of action, Johnson argues that Mazza has failed to state a claim on which relief can be granted.  *See* Fed. R. of Civ. P. 12(b)(6);  (Mot. to Dismiss or Strike.)  Alternatively, as to Mazza's counterclaims for fraud and conspiracy, Johnson makes a special Motion to Strike under California's Anti-SLAPP statute (Cal. Civ. Proc. Code § 425.16).  (*Id.*)  The Court analyzes the relevant grounds for dismissal in connection with each cause of action in turn.

**1.   Legal Standard**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Generally, a court should freely give leave to amend a complaint that has been dismissed, even if not requested by the party. *See* Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). However, a court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Alternatively, California's Anti-SLAPP (Strategic Lawsuit against Public Participation) statute allows defendants (or counterdefendants) to make a special motion to strike a claim if that claim arises from an act by the defendants to further their right of petition or free speech in connection with a public issue. Cal. Civ. Proc. Code § 425.16(b)(1); *see also Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (concluding that the twin aims of the *Erie* doctrine "favor application of California's anti-SLAPP statute in federal cases"). An act qualifies for protection under this statute if it falls within one of four categories:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law[;] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official

proceeding authorized by law[;] (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest[;] or (4) any conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

*Id.* § 425.16(e).

Analyzing an Anti-SLAPP motion involves a two-step process. First, a court determines whether the defendants have made a prima facie showing that the plaintiff's claims arise from an act protected under the statute. *Ingles v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1061 (2005). To make this determination, a court should look to any pleadings or affidavits that state facts supporting or refuting the parties' theories of liability or defense regarding the claim. *Martinez v. Metabolife Int'l Inc.*, 113 Cal. App. 4th 181, 186 (2003).

Then, the court should decide whether the parties have carried their respective burdens. If the defendant (here, counterdefendant) makes the required prima facie showing, the burden then shifts to the plaintiff (here, counterclaimant) to demonstrate "a probability that [he] will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). The plaintiff must provide admissible evidence to establish that "the complaint is legally sufficient and supported by a prima facie showing of facts [that] sustain a favorable judgment." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001). If the plaintiff fails to make this showing by a preponderance of the evidence, a court must grant the motion to strike and award the prevailing defendant attorneys' fees and costs. Cal. Civ. Proc. Code § 425.16(c)(1); *Ingles*, 129 Cal. App. 4th at 1061–62.

**2.     First Cause of Action: Intentional Interference with a Contract**

Under California law, the elements for the tort of intentional interference with a contract are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a

breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *United Nat'l Maintenance, Inc. v. San Diego Convention Center, Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014). The Court dismissed this cause of action in Mazza's original Counterclaim for failure to allege a contractual relationship with a third party, since the parties listed as counterclaim defendants (Matthew Johnson, Nathan Johnson, Alacrity, and Gemini) were the very same individuals and entities who were parties to the contract at issue. (Order 7.) Now, on his second attempt, Mazza asserts this cause of action solely against Matthew Johnson and Nathan Johnson. (*See* Countercompl. ¶ 38.) This does not cure the defect. The Johnson brothers control Alacrity and Gemini; as such, they are not "strangers" to the contract for purposes of this tort. (*See* Countercompl. ¶ 20.) "California law has long recognized that the core of intentional interference business torts is interference with an economic relationship by a third-party *stranger* to that relationship, so that [a party] with a direct interest or involvement in that relationship is not usually liable for harm." *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 832 (9th Cir. 2001) (emphasis in original). As such, Mazza's claim cannot survive Plaintiffs' Motion to Dismiss. Because Mazza has already amended once following dismissal on the same basis and does not allege any third party stranger to the contract in his second Counterclaim, the dismissal is without leave to amend.

### 3. West's Separate Claim for Intentional Interference with a Contract

This cause of action is also for intentional interference with a contract, but it is based on a set of facts separate from those relevant to the first cause of action. Here, Defendant West independently claims that Alacrity, Gemini, and/or Matthew Johnson are responsible for interfering with a contractual relationship between Alethean and its payroll company for payment of taxes. (Countercompl. ¶¶ 43–53.) This claim for intentional interference with a contract also fails.

West does not adequately allege the breach of a contract with a third party. The

Countercomplaint states that the third-party contractual relationship was between Alethean/West and Alethean's payroll company.  (*See* Countercompl. ¶ 44.)  The allegation of breach is that Matthew Johnson failed to pay a tax obligation owed to the Internal Revenue Service ("IRS") once he took control of Alethean, causing Paul West to become personally liable since he had served as the guarantor.  (*Id.* ¶¶ 44–45.)  The tax obligation was associated with the alleged third-party payroll contract because the debt stemmed from payroll taxes that had gone unpaid.  (*See id.* ¶ 45.)  However, the Counterclaim explicitly alleges that the tax obligation/debt was already overdue at the time Matthew Johnson took control of Alethean.  (*See id.* ¶ 46.)  As such, West has not sufficiently alleged that Matthew Johnson interfered with the contract between Alethean and the payroll company.  From the language of the Counterclaim, it appears that the contract had already been breached by the time Matthew Johnson took over Alethean.  (*See id.*)  The fact that Johnson failed to pay the already-due debt once he took over is not sufficiently characterized as a breach in the Coutnerclaim.  As such, West has not stated a claim for intentional interference.  Because West has not previously asserted this claim, the Court dismisses the claim with leave to amend.

### 4.    Intentional Interference with a Prospective Economic Advantage

This cause of action fails for the same reason as Mazza's first cause of action. The Ninth Circuit has ruled that a third party for purposes of intentional interference business torts must be a true *stranger* to the relationship, and Mazza has not alleged such a relationship here. *See Marin Tug & Barge, Inc.*, 271 F.3d at 832.   Though Mazza asserts this specific cause of action for the first time in his Counterclaim, it is nearly identical to his previously-dismissed cause of action for Negligent Interference with a Contract.  The Court dismissed that claim because California does not recognize Negligent Interference with a Contract as a cause of action.  (Order 8.) Mazza's second attempt (albeit under a different name) makes it clear that there is no stranger to the prospective business relationship.  As this is not the type of absence

that can be cured through amendment, this dismissal is without leave to amend.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other [consistent] facts.").

### 5.    Fraud

Claims of fraud are subject to the particularized pleading standard.  Courts have interpreted Federal Rule of Civil Procedure ("FRCP") 9(b) to require that the pleader of a fraud claim state the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Dist. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Lewis v. Sporck*, 612 F.Supp. 1316, 1325 (N.D. Cal. 1985) (requiring that pleaders of fraud "identify the time, place, and manner of each fraud plus the role of each defendant in each scheme").

The problem here is that Mazza lumps together allegations against multiple defendants.  For instance, the Countercomplaint states, "Matthew and or Nathan Johnson misrepresented to counterclaim plaintiffs that they (i.e. – Alacrity and or Gemini) were experienced in funding the type of deals which Alethean would be referring to them . . . ."  (Countercompl. ¶ 65.)  Mazza has repeatedly attempted to have it both ways with respect to the identities of Matthew Johnson, Nathan Johnson, Alacrity, and Gemini, and it disrupts the coherency of his counterclaims.  In the first cause of action, Mazza claims that the Johnson brothers are separate from Alacrity and Gemini such that they can act as third parties in an intentional interference with a contract claim, but here, Mazza asserts that the brothers are one and the same with the entities for purposes of fraud misrepresentations.  This  internal inconsistency within the Countercomplaint demonstrates that Mazza's pleadings are not sufficient under FRCP 9(b).   The allegations impermissibly intermingle the identities of parties.  Further, the "time" alleged for purposes of these misrepresentations is "in or about

1   2010." This is far too vague to allow Plaintiffs a meaningful opportunity to identify

2   the alleged misrepresentations and defend against Mazza's claims. As such, this cause

3   of action fails.   And since Mazza has already had a chance to amend his

4   Counterclaim, the Court declines to grant leave to amend in this instance.

5         The Court does not, however, agree with Plaintiffs' argument in making a

6   special Motion to Strike under California's Anti-SLAPP statute. As stated in the

7   Court's previous Order denying this type of motion on Mazza's fraud counterclaim,

8   the inclusion of allegations relating to a party's action in bringing a previous lawsuit

9   does not automatically mean that the claim is a SLAPP. *See Castleman v. Sagaser*,

10  216 Cal. App. 4th 481, 499 (2013) ("it does not follow that any claims associated with

11  [bringing a previous lawsuit] are subject to the [Anti-SLAPP] statute."). Here, the

12  majority of Mazza's counterclaim for fraud is based on allegations not related to

13  Plaintiffs' 2013 state court suit, and the Court is not convinced that Mazza included

14  those allegations for an improper purpose or to have a chilling effect on Plaintiffs' use

15  of the court system. As such, the Court **DENIES** Plaintiffs' special Motion to Strike

16  with respect to Mazza's fraud claim.

17        **6.   Conspiracy**

18        In order for Mazza's conspiracy claim to survive Plaintiffs' Rule 12(b)(6)

19  motion, it would need to sufficiently plead the existence of an underlying tort

20  associated with the alleged conspiracy. Because conspiracy "imposes liability on

21  persons who, although not actually committing a tort themselves, share with the

22  immediate tortfeasors a common plan or design in its perpetration . . . [conspiracy]

23  must be activated by the commission of an actual tort." *Moran v. Endres*, 135 Cal.

24  App. 4th 952, 954–55 (2006).

25        Here, Mazza has not alleged such a commission. The Counterclaim

26  implies that the underlying tort is fraud (*see* Countercompl. ¶ 81), but as discussed

27  above, Mazza has not adequately pled fraud. Therefore, Mazza's conspiracy claim

28  fails. As Mazza has already had a chance to amend, the Court does not grant leave to

1   amend here.

2    Additionally, for the reasons discussed in connection with Mazza's fraud

3   counterclaim, the Court does not find that the Countercomplaint is a SLAPP. *See*

4   *Castleman*, 216 Cal. App. 4th at 499.

5   **B. Allegretti and HBK's Motion for Judgment on the Pleadings**

6    In Plaintiffs' SAC, the causes of action for fraud and fraudulent inducement are

7   alleged against all defendants, including Allegretti and HBK.  (*See generally* SAC.)

8   Arguing a failure to plead these fraud-related claims with the requisite specificity,

9   Allegretti and HBK move for judgment on the pleadings as to their liability.

10    **1. Legal Standard**

11    After the pleadings are closed but within such time as to not delay the trial, any

12   party may move for judgment on the pleadings. Fed. R. Civ P. 12(c). The standard

13   applied on a Rule 12(c) motion is essentially the same as that applied on Rule 12(b)(6)

14   motions; a judgment on the pleadings is appropriate when, even if all the allegations

15   in the complaint are true, the moving party is entitled to judgment as a matter of law.

16   *Milne ex rel. Coyne v. Stephen Slesinger, Inc.,* 430 F.3d 1036, 1042 (9th Cir. 2005);

17   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007) ("[f]actual

18   allegations must be enough to raise a right to relief above the speculative level … on

19   the assumption that all the allegations in the complaint are true (even if doubtful in

20   fact)." (Citations omitted)).   When determining a motion for judgment on the

21   pleadings, the Court should assume the allegations in the Complaint to be true and

22   construe them in the light most favorable to the plaintiff, and the movant must clearly

23   establish that no material issue of fact remains to be resolved. *McGlinchey v. Shell*

24   *Chem. Co.,* 845 F.2d 802, 810 (9th Cir. 1988). However, "conclusory allegations

25   without more are insufficient to defeat a motion [for judgment on the pleadings]." *Id.*

26    Failure to plead with particularity as required by Rule 9(b) can be challenged

27   by a Rule 12(c) motion. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*

28   637 F.3d 413, 418 (9th Cir. 2012).  Fraud allegations under Rule 9(b) must be state

with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007).

**2. Analysis**

As the factual basis for both causes of action (fraud and fraudulent inducement) is the same, and because both causes of action are subject to the same heightened pleading standard, the Court will analyze them together.

Plaintiffs' fraud allegations against Allegretti and HBK are too vague to survive Rule 9(b) scrutiny. Plaintiffs impermissibly lump together allegations against multiple defendants; stating, for example, "Specifically, HA&W, HBK, and the Alethean parties represented that they would generate a minimum of $5 million in investment banking fees for Gemini within three years." (SAC ¶ 44.) Based on the *Swartz* rule regarding the identification of parties to the misrepresentations, this type of group allegation is insufficient. *See Swartz*, 476 F.3d at 764. Allegretti and HBK are separate from the other defendants in this action, and as such, they cannot adequately defend against allegations of fraud in which their actions are lumped in with the actions of separate entities.

In addition, Plaintiffs' allegations regarding Allegretti and HBK's role in the purported misrepresentations are vague as to content. For example, Plaintiffs claim that HBK and Allegretti "concealed material facts . . . in order to induce Plaintiffs into entering into the business relationship." (SAC ¶ 45.) Without more, this statement is conclusory; it does not provide the "how" or "why" for the inducement or HBK and Allegretti's concealment of material facts.

The primary change in this version of Plaintiffs' Complaint is that it more specifically alleges conversations Plaintiffs had with Allegretti on behalf of HBK about HBK's use of the CPA360 software. (*Compare* FAC, ECF No. 38, *with* SAC ¶ 41.) However, while Plaintiffs sufficiently allege conversations with HBK and Allegretti during a time period relevant to Plaintiffs' entering into a loan agreement

with Alethean, they do not sufficiently allege the significance of those conversations to HBK and Alethean.  (*See* SAC ¶ 41.)  Moreover, Plaintiffs have not supported their allegation that Allegretti and HBK knew their misrepresentations would induce action on Plaintiffs' part.  Plaintiffs' claim that all Defendants were "the agents, authorized representatives, joint venturers, partners, and/or alter egos of one another, and in doing the acts alleged in this complaint, did so jointly and for a common purpose" is conclusory and has no support in the remainder of the Complaint.  (SAC ¶ 24.) Plaintiffs have failed to link Allegretti and HBK's conduct to the other defendants' alleged scheme, and their pleadings do not satisfy the Rule 9(b) standard.

### 3.    Leave to Amend

The Court declines to grant leave to amend.  Plaintiffs have now had two opportunities to properly state their claims and have not done so.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (finding it proper to deny leave to amend for repeated failure to cure deficiencies with previous amendment).

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' Motion to Dismiss Mazza's counterclaims and **DENIES LEAVE TO AMEND** for all of Mazza's causes of action except Paul West's separate claim for intentional interference with a contract.  (ECF No. 90.)  Any amended Countercomplaint must be filed within **30 days** of the date of this Order.  The Court further **DENIES** Plaintiffs' special Motion to Strike and **GRANTS** Allegretti and HBK's Motion for Judgment on the Pleadings **WITHOUT LEAVE TO AMEND** (ECF No. 95).

As an administrative matter, Defendants Allegretti and HBK's Motion for Judgment on the Pleadings noticed at ECF No. 93 is **STRICKEN AS MOOT** in light of the corrected motion filed at ECF NO. 95.


**IT IS SO ORDERED.**


February 17, 2017

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

14